**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR422-016-1 |
| | ) | |
| SHAQUANDRA WOODS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Defendant Shaquandra Woods is charged with one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349, two counts of False, Fictitious, or Fraudulent Claims in violation of 18 U.S.C. §§ 287 and 2, and two counts of False Document in violation of 18 U.S.C. §§ 1001(a)(3) and 2. Doc. 87 (Superseding Indictment). Currently before the Court are twelve motions filed by Woods: Motion to Participate in Voir Dire, doc. 19, Motion for Notice by the Government of the Intention to Use Evidence, doc. 20, Motion to Preserve Evidence, doc. 21, Motion for Disclosure of Electronic or Other Surveillance, doc. 22, Motion to Sever, doc. 105, Motion to Prevent the Government from Using 404(b) Evidence, doc. 109, Motion to Strike, doc. 110, Motion to Suppress, doc.

111, Motion to Dismiss Superseding Indictment, doc. 112, Second Motion to Dismiss for Fundamental Ambiguity, doc. 114, First Amended Motion to Suppress, doc. 121, and Amended Motion to Dismiss for Fundamental Ambiguity, doc. 133.   The Government has responded to each.   *See* doc. 115 (response to doc. 105); doc. 116 (response to docs. 19, 20, 21, & 22); doc. 117 (response to doc. 109); doc. 118 (response to doc. 110); doc. 119 (response to docs. 111 & 112); doc. 120 (response to doc. 114); doc. 122 (response to doc. 121); doc. 137 (response to doc. 133).   The Court held a hearing on October 24, 2022.   Doc. 140 (Minute Entry).   The motions are all ripe for disposition.

## I.   UNARGUED MOTIONS

The parties' Status Report indicated no evidentiary hearing was needed for Defendant's Motion to Participate in Voir Dire, doc. 19, Motion for Notice by the Government of Intention to Use Evidence, doc. 20, Motion to Preserve Evidence, doc. 21, and Motion for Disclosure of Electronic or Other Surveillance, doc. 22.   *See* doc. 124.   During the hearing, the Defendant confirmed she had no evidence or argument to present to the Court related to these four motions.   *See* doc. 140 at 1.

2

Defendant first seeks permission for her counsel to participate in voir dire.   Doc. 19.   In response, the Government states that it defers to the Court "regarding the manner in which it conducts voir dire."   Doc. 116 at 2.   Defendant's motion acknowledges the wide discretion afforded to the trial court in how voir dire is conducted.   *See* doc. 19 at 2; *see also* Fed. R. Crim. P. 24(a).   The longstanding practice in this District is for the presiding judge to conduct voir dire.   The Defendant's motion does not provide sufficient grounds for departing from this standard practice. Woods may renew her request, or raise any other issues related to voir dire, with the District Judge at the appropriate time.   The Motion to Allow Participation in Voir Dire is **DENIED**.   Doc. 19.

Defendant's next motion asks the Court to "require the Government to give notice of its intention to use any evidence" during its case in chief at trial.   Doc. 20 at 1.   The Government objects to any requirement that it be required to produce, at this stage in the proceedings, a notice "identifying which documents in discovery will be used as exhibits at trial."   Doc. 116 at 3.   It does assert, however, that its "production of evidence in discovery should be sufficient for Defendant Woods to

3

presume that the government may use that evidence at trial to prove the offenses charged." *Id.* at 2-3.   Therefore, to the extent the motion seeks "general discovery of potential evidence," the Government argues its "discovery policy should satisfy the motion, rendering it moot." *Id.* at 3. Defendant's motion is not sufficiently clear as to what it seeks, or even on what authority it rests.   *See* doc. 20; *see also* S.D. Ga. L. Crim. R. 12.1 ("[E]very motion filed in a criminal proceeding shall be accompanied by a memorandum of law *citing supporting authorities.*" (emphasis added)). To the extent Woods asks the Court to direct the Government to provide its trial exhibit list at this stage in the proceedings, it is premature and therefore **DENIED**.   Doc. 20.   When and how trial exhibits are identified or exchanged by the parties will be determined by the presiding District Judge prior to trial.

Next, Woods has filed a Motion to Preserve Evidence, which explains that it "requests no disclosure, discovery, inspection, or production," but "merely seeks to preserve evidence."   Doc. 21 at 1.   The Government does not oppose the motion.   Doc. 116 at 3.   The motion is, therefore, **GRANTED**, as unopposed.   Doc. 21.

The last of the four unargued motions is Woods' Motion for Disclosure of Electronic or Other Surveillance.   Doc. 22.   It seeks an Order compelling the Government to disclose any electronic or other surveillance.   *Id.*   The Government contends it "has provided open file discovery in this case, including any recordings or electronic surveillance."   Doc. 116 at 3.   The Government does not, however, indicate whether it believes this "open file discovery" renders Woods' motion moot.   *Id.*   In the absence of any argument in opposition to Woods' motion, it is **GRANTED**.   Doc. 22.

## II.   MOTION TO SEVER

Woods is charged in Count 1, along with co-defendants Courtney Gilchrist and Kenneth Jackson, of conspiring to commit wire fraud to obtain COVID-19 related Economic Injury Disaster Loans (EIDL) proceeds under false and fraudulent pretenses.   Doc. 87 at 5-9.   She is charged together with Gilchrist in Count 3 of making false, fictitious, or fraudulent claims, *id.* at 11, and in Count 6 of making and using a false document, *id.* at 14.   Woods is charged alone in Count 2 of making false, fictitious, or fraudulent claims, *id.* at 10, and in Count 5 of making and

using a false writing and document, *id.* at 13.   She seeks to be tried

separately from her co-defendants.   Doc. 105.   The Government opposes

her request.   Doc. 115.

> Under Federal Rule of Criminal Procedure 8(b):
>
> [t]he indictment or information may charge 2 or more
> defendants if they are alleged to have participated in the same
> act or transaction, or in the same series of acts or
> transactions, constituting an offense or offenses.   The
> defendants may be charged in one or more counts together or
> separately.   All defendants need not be charged in each
> count.

*Id.*   "[U]nder Rule 8(b) joinder is appropriate where the indictment

charges multiple defendants with a single conspiracy and also charges

some of the defendants with substantive counts arising out of the

conspiracy."   *United States v. Beale*, 921 F.2d 1412, 1429 (11th Cir. 1991)

(internal quotations and citation omitted).   The allegations in the

Superseding Indictment, which charge all three co-defendants with a

single conspiracy and then charges some of the defendants with

substantive counts arising out of that conspiracy, meets the pleading

requirements of Rule 8(b).   *Id.*; *see also* doc. 87.

"Once Rule 8(b) has been satisfied by the allegations in the indictment, severance is governed entirely by Fed. R. Crim. P. 14, which recognizes that even proper joinder under Rule 8(b) may prejudice a defendant or the government." *United States v. Jones*, 2009 WL 2920894, at *2 (S.D. Ga. Sept. 11, 2009) (citing *United States v. Lane*, 474 U.S. 438, 447 (1986)).   Rule 14(a) provides that:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

*Id.*   The Supreme Court has directed district courts to grant a severance under Rule 14 "*only* if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (emphasis added).

In the Eleventh Circuit, the strong preference is for defendants charged with a common conspiracy to be tried together.   *United States v. Lopez*, 649 F.3d 1222, 1234 (11th Cir. 2011).   Courts have recognized that some degree of prejudice is inherent in every joint trial, but " 'only

in the event such prejudice appears to be compelling does severance become warranted.'" *United States v. Harris*, 908 F.2d 728, 736 (11th Cir. 1990) (quoting *United States v. Roper*, 874 F.2d 782, 789 (11th Cir. 1989)).   A defendant seeking severance, therefore, carries a " 'heavy burden of demonstrating that compelling prejudice' would result from a joint trial.   *Lopez*, 649 F.3d at 1234 (quoting *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007)) (alterations omitted).

"To establish this level of prejudice, a defendant must show that a joint trial would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work.   [Cit.]   It is not enough that a defendant argues he may have a better result had the trials been severed."   *United States v. Mosquera*, 886 F.3d 1032, 1041 (11th Cir. 2018) (internal quotations and citations omitted).   The compelling prejudice requirement is not satisfied simply because much of the evidence presented at trial is admissible only against a co-defendant. *United States v. Pritchett*, 908 F.2d 816, 822 (11th Cir. 1990).   Severance is only required where the jury cannot "separate the evidence that is

relevant to each defendant and render a fair and impartial verdict as to [that defendant]."   *United States v. Lippner*, 676 F.2d 456, 464 (11th Cir. 1982) (internal quotation and citation omitted).   A limiting instruction will normally "suffice to cure any risk of prejudice."   *Zafiro*, 506 U.S. at 539.

In support of her severance request, Woods argues that the Government obtained statements made by her co-defendants that incriminate her, either directly or by association.   Doc. 105 at 1.   She explains that she intends to call her co-defendant, Kenneth Jackson, as a witness, but expects that he will not appear and testify as a witness where he is being tried by the same jury and on the same charge.   *Id.* at 2, 5.   She also suggests that she may call her co-defendant Courtney Gilchrist.   *Id.* at 3, 5.   Additionally, she argues the Government might introduce evidence which may be inadmissible against her, but admissible against her co-defendants, *id.* at 4, or that her co-defendants might introduce evidence which would be inadmissible against her in a separate trial, *id.*   Finally, she points to the speculative risk that, *if* she chooses to exercise her right against self-incrimination and remain silent,

her co-defendants' counsel *might* exercise the right to comment upon the failure to testify.   *Id.* at 4-5.

During the hearing, Woods solicited testimony from Agent Douglas Dye related to a recorded telephone call with her co-defendant Kenneth Jackson.   *See* doc. 140.   Jackson was not present and was not called as a witness.   *Id.*   There was no evidence presented that Jackson would voluntarily testify on Woods' behalf, even if severance were granted. Woods also called her co-defendant Courtney Gilchrist to testify, but Ms. Gilchrist asserted her Fifth Amendment right and indicated that she would assert that right in response to any question posed to her in these proceedings, no matter the circumstance.   *Id.*

Based on Gilchrist's unequivocal assertion of her Fifth Amendment right and Jackson's absence from the hearing, it does not appear that either co-defendant will voluntarily appear to testify if called by Woods, even if she were granted a separate trial.   *Cf. United States v. Goodwin*, 625 F.2d 693, 700 (5th Cir. 1980) ("A valid assertion of [a] witness' Fifth Amendment rights justifies a refusal to testify despite the defendant's

Sixth Amendment rights.").[1]   Therefore, Woods has not made the showing necessary for a severance on these grounds.   *See United States v. Johnson*, 713 F.2d 633, 640-41 (11th Cir. 1983) (A defendant must demonstrate, among other things, "that the codefendant would indeed have testified at a separate trial" before a court will sever based on the desire to offer the exculpatory testimony of a co-defendant.); *Browne*, 505 F.3d at 1269 (same).

Woods' general assertion that evidence might be introduced against her co-defendants that would be irrelevant or otherwise inadmissible against her is also unavailing.   Her written submission does not identify any actual evidence that would fall into this category.   *See generally* doc. 105.   During the hearing, she pointed to the counts in the indictment in which she is not charged and argued that evidence admitted against her co-defendants on those counts might prejudice her.   *See* doc. 140-3 at 1-19.

---

[1] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

Sometimes, where "a cumulative and prejudicial 'spill over' effect may prevent the jury from sifting through the evidence to make an individualized determination as to each Defendant," severance may be warranted. *United States v. Chavez*, 584 F.3d 1354, 1360-61 (11th Cir. 2009).[2]   Defendant's prejudicial spillover argument is couched in terms of vague generalities.   She provides no specific examples of how she will be unduly prejudiced at a joint trial, and, more importantly, why a jury would be unable to sift through the evidence at trial and make an individual determination of guilt as to each defendant.   Whatever risk there may be can likely be cured through limiting instructions to the jury. *See Zafiro*, 506 U.S. at 539; *see also United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004) ("In general, the strong presumption is

---

[2] The Eleventh Circuit in *Chavez* recognized two additional types of "prejudicial joinder that can require a severance under Rule 14," in addition to the two addressed above.   584 F.3d at 1360.   They are: (1) where the defendants rely upon mutually antagonistic defenses; and (2) where inculpatory evidence will be admitted against one defendant that is not admissible against the other.   *Id.*   Woods' arguments do not hint at the first scenario.   *See generally* doc. 105.   Her assertion that "[e]vidence in this case will be introduced by [the Government] which may be inadmissible against this defendant, but which may be admissible against the co-defendants" hints at the second.   *Id.* at 4.   However, Woods has not identified any piece of inculpatory evidence that would be inadmissible against her, yet admissible against her co-defendants.   *See* doc. 105; *see also* doc. 140-1.   Her general assertion is not sufficient to carry her "heavy burden."   *See Lopez*, 649 F.3d at 1234.

that jurors are able to compartmentalize evidence by respecting limiting instructions specifying the defendants against whom evidence may be considered."). Accordingly, at this point, Woods has not demonstrated that she would suffer the type of compelling prejudice necessary to mandate severance.

Finally, Woods' suggestion that her co-defendants' counsel might comment upon her failure to testify if she chooses to exercise her Fifth Amendment right is speculative, at best, and does not require severance. Defense counsel may comment on a co-defendant's silence "only when defense counsel has a 'clear duty' to make the argument in order to avoid prejudicing the client." *United States v. Johnson*, 713 F.2d 633, 652 (11th Cir. 1983). This "clear duty" does not arise "unless the defenses set forth by the co-defendants are truly antagonistic." *Id.* Woods does not argue that she and her co-defendants are relying on "mutually exclusive defenses" that will necessitate reference to any defendants' failure to testify. *Id.*; *see also* doc. 105. Her assumptions about what *may* happen are not sufficient, at this point, to justify severance.

Because she has not carried her heavy burden to show compelling prejudice, Woods' Motion to Sever is **DENIED**.   Doc. 105.

## III.   GOVERNMENT'S USE OF 404(b) EVIDENCE

The Government filed a Notice pursuant to Federal Rules of Evidence 404(b) and 609 and Local Rule 16.2 that it intends to introduce evidence that, in addition to the loans identified in the indictment, Woods assisted the following individuals and businesses in improperly obtaining stimulus loans: (1) an EIDL for a company called Actually Living Life Management Consulting around October 8, 2020; (2) an EIDL for a company called D'Evils Limited Co. around October 10, 2020; and (3) a Paycheck Protection Program ("PPP") loan for a company called Air Run Boy Services, LLC, around January 14, 2021.   Doc. 67 at 1-2. Additionally, it intends to introduce evidence that Woods "caused the submission of the following fraudulent PPP loan applications on behalf of businesses that she purportedly owned: (1) S.A. Woods Law, submitted around April 14, 2020; (2) EZE TRACE, L.L.C., submitted around July 24, 2020; and (3) S.A. Woods Enterprise, LLC, submitted around January 14, 2021.   *Id.* at 2.

Woods responds to that Notice and moves *in limine* to exclude "evidence concerning Cleopatra Smith and Jeremial Coleman," arguing such evidence "is irrelevant, and the prejudicial effect outweighs any probative value, pursuant to Rule 401 of the Federal Rules of Evidence." Doc. 109 at 1-2.   Additionally, Woods argues the evidence does not qualify for admission under Rule 404(b) and is only offered "for prohibited uses" outlined in Rule 404(b)(1), and that the notice was defective.   *Id.* at 2.   The Government's response helpfully explains that the challenged evidence "concerning Cleopatra Smith and Jeremial Coleman" relates to EIDL applications for Actually Living Life Management Consulting and D'Evils Limited Co.   Doc. 117 at 2 n.1.   The Government argues this evidence is admissible as either intrinsic evidence or as Rule 404(b) evidence, and that it was properly noticed.   *Id.* at 3.

"Uncharged crimes, wrongs, or acts may be admissible either as intrinsic or extrinsic evidence, provided evidence of the conduct meets certain criteria."   *United States v. White*, 848 F. App'x 830, 839-40 (11th

Cir. 2021).   As the Eleventh Circuit has explained regarding intrinsic evidence:

> Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

*United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (internal quotation and citation omitted).   This type of intrinsic evidence falls outside the scope of Rule 404(b) and is admissible if "it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."   *United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013) (internal quotation and citation omitted).   "Evidence is inextricably intertwined if it is an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'"   *Id.* (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)).   The Eleventh Circuit "repeatedly has held that evidence of uncharged conduct that is part of the same scheme or series

of transactions and uses the same *modus operandi* as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b)." *United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015).

Conversely, extrinsic evidence of "any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). It may, however, be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. "The rule permits the introduction of evidence of a prior or uncharged act if the government can demonstrate: (1) a proper purpose for introducing the evidence; (2) that the prior act occurred, and that the defendant was the actor; and (3) that the probative value of introducing the evidence outweighs any prejudicial effect the evidence might have." *United States v. Cancelliere*, 69 F.3d 1116, 1124 (11th Cir. 1995) (citing *United States v. Perez–Garcia*, 904 F.2d 1534, 1544 (11th Cir.1990)). This framework governs regardless of whether the prior activity might give

rise to criminal liability.  *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995).

The third prong of the Rule 404(b) analysis encapsulates Rule 403's balancing test.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").  "All admissible evidence, whether intrinsic or extrinsic, must be weighed against Rule 403 prejudice."  *Troya*, 733 F.3d at 1131.  Exclusion under Rule 403 is an extraordinary remedy, and where the evidence is central to the prosecution's case, it should not lightly be excluded.  *Id.* at 1131-1132.  "[T]he balance should be struck in favor of admissibility."  *Id.* at 1132 (internal quotation and citation omitted).

The Government first argues that the challenged evidence is intrinsic and falls outside the scope of Rule 404(b).  Doc. 117 at 3-4.  It explains that "the two EIDL applications that are the subject of Defendant's motion were submitted from the same IP address as other EIDL applications that involved Defendant Woods, and were submitted from the same device," and "involved the same techniques as the efforts

charged in the indictment."   *Id.* at 4.   Since these acts occurred during the same time and using the same methods as the charged conduct, the Government contends they are intrinsic evidence.   *Id.* (citing *Ford*, 784 F.3d at 1394).   The Government also argues, in the alternative, that the evidence is admissible under Rule 404(b), and if it is admitted under Rule 404(b), it has filed a proper notice.   Doc. 117 at 4-5.

Defendant's written submission makes only vague, generalized arguments that the evidence ought to be excluded, citing to various subsections of Federal Rule of Evidence 404.   *See* doc. 109.   "In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds.   [Cite.]   The movant has the burden of demonstrating that the evidence in inadmissible on any relevant ground."   *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010) (internal citation omitted).   Woods' motion, supplemented by her argument during the hearing, does not fully respond to the Government's two alternative theories of admissibility, and the Court cannot say, on the record before

it, that the evidence is clearly inadmissible.   Therefore, her motion *in limine* is **DENIED**.   Doc. 109.

## IV.   MOTION TO STRIKE

Woods moves to strike Counts One, Two, and Five of the Superseding Indictment.   Doc. 118.   She argues Court One is duplicitous, because the "Manner and Means" allegations supporting the conspiracy charged in Count One are, instead, separate and distinct offenses and should have been alleged as such.   *Id.* at 4.   Therefore, she argues, "[t]he joining of these offenses in Count One creates duplicity[.]" *Id.*   She additionally contends that Count One is not plain or concise and does not provide a written statement of the essential facts constituting the Conspiracy offense charged.   *Id.* at 5.   She also argues that portions of Count One, along with Counts Two and Five, are defective because "all alleged criminal conduct occurred solely in the state of Florida" and venue is therefore improper.   *Id.* at 6.

The Government responds that the inclusion of "far-reaching manner and means allegations in the conspiracy count" does not render Count One duplicitous, doc. 118 at 2-3, and that Count One meets the

requirements of Rule 7, *id.* at 4-5.   It also argues that venue is proper

over the conspiracy charged in Count One and the substantive charges in

Count Two and Count Five.   *Id.* at 5-8.

An indictment is "duplicitous" when two or more distinct offenses

are charged together in a single count.   *In re Gomez*, 830 F.3d 1225, 1227

(11th Cir. 2016).   In *Braverman v. United States*, 317 U.S. 49, 54 (1942),

the Supreme Court held that an "allegation in a single count of a

conspiracy to commit several crimes is not duplicitous" because the

conspiracy is only a single offense, no matter how diverse its objects.

This is a "firm tenet" of criminal law in the Eleventh Circuit.   *United*

*States v. Ramos*, 666 F.2d 469, 473 (11th Cir. 1982).   Here, Count One

charges Woods with a conspiracy to commit wire fraud in violation of a

single statute, 18 U.S.C. § 1349.   Doc. 87 at 5.   Because it properly

charges a single conspiracy, the Court should find the argument that it

is duplicitous "totally without merit."   *Ramos*, 666 F.2d at 474.

Federal Rule of Criminal Procedure 7 governs Woods' argument

that Count One is insufficient.   Federal Rule of Criminal Procedure 7(c)

states that an indictment "must be a plain, concise, and definite written

statement of the essential facts constituting the offense charged." *Id.*
It is well-settled that "an indictment is sufficient if it (1) presents the
essential elements of the charged offense, (2) notifies the accused of the
charges to be defended against, and (3) enables the accused to rely upon
a judgment under the indictment as a bar against double jeopardy for
any subsequent prosecution for the same offense." *United States v.
Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) (internal quotations
omitted).   Woods' motion does not identify any defect in Count One
rendering it violative of Rule 7(c).   *See generally* doc. 110.   She
confusingly argues that the Government "failed to allege a commerce
nexus where such a connection is a necessary element of defense
concerning the EZ Legal Solutions, LLC transaction as well as the
Company transaction."   *Id.* at 5.   This argument is not only
grammatically confusing, but also not supported by any citations to any
governing authority.   *Id.*; *see also* S.D. Ga. L. Crim. R. 12.1.   The
request to dismiss Count One should, therefore, be denied.

Woods also contests venue over Counts One, Two, and Five.   Doc. 110 at 9-10.   In *United States v. Matthews*, the Eleventh Circuit explained how venue works in criminal prosecutions:

> Title 18 of the United States Code, governing the jurisdiction and venue of the federal courts, provides that "any offense begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."   18 U.S.C. 3237(a).   Where a conspiracy is concerned, venue is thus proper in any district where "an overt act" was committed in furtherance of the conspiracy. [*United Sates v. Smith*, 918 F.2d 1551, 1557 (11th Cir. 1990)]. The overt act need not be committed by a defendant in the case; the acts of accomplices and unindicted co-conspirators can also expose the defendant to jurisdiction.   *See United States v. Delia*, 944 F.2d 1010, 1014 (2d Cir.1991).   Moreover, the fact that a majority of a conspiracy's activity took place in a venue other than the one where the trial takes place does not destroy venue.   [*United States*] *v. Dabbs*, 134 F.3d 1071, 1079 (11th Cir.1998).

168 F.3d 1234, 1246 (11th Cir. 1999).

Count One alleges that the conspiracy occurred in this District and elsewhere.   Doc. 87 at 5.   It alleges Woods' two co-defendants, her alleged co-conspirators, resided in this District.   *Id.* at 2.   It alleges two of the companies at issue were based in this District.   *Id.* at 3.   It alleges that Woods and her co-defendants submitted false documents to the

United States, through the Small Business Association ("SBA"), on behalf of those Savannah-based companies. *Id.* at 7-9. These allegations are sufficient for venue over Count One to lie in this District.

Count Two charges Woods with making False, Fictitious, or Fraudulent Claims in violation of 18 U.S.C. §§ 287 and 2. Doc. 87 at 10. It alleges she submitted an EIDL application to the SBA on behalf of "Company 3." *Id.* "Company 3" is alleged to be a "Savannah, Georgia-based unincorporated personal services company." *Id.* at 3. Count Five charges Woods with False Document in violation of 18 U.S.C. §§ 1001(a)(3) and 2. *Id.* at 13. It alleges that Woods transmitted to the SBA a tax document containing false information about her co-defendant Kenneth Jackson, who is alleged to reside in this District. *Id.* These allegations are sufficient for the Court to find that venue as to these Counts is proper, since the offenses were either begun, continued, or completed in this District. 18 U.S.C. 3237(a).

For these reasons, Defendant's Motion to Strike should be **DENIED**. Doc. 110.

# V.   MOTION TO SUPPRESS AND TO DISMISS

The next subset of motions for disposition are Woods' Motion to Suppress, doc. 111, First Amended Motion to Suppress, doc. 121, and Motion to Dismiss Superseding Indictment, doc. 112.   The Government filed a joint response to the Motion to Suppress and Motion to Dismiss. Doc. 119.   It also responded in opposition to the Amended Motion to Suppress.   Doc. 122.

These motions all relate to a telephone call between Woods and her co-defendant Courtney Gilchrist.   *See generally* docs. 111, 112, 121.   At the time of the call, Woods was unaware that Gilchrist was in the presence of a federal agent, Douglas Dye, who listened to the call and captured it on his recording device.   In her initial Motion to Suppress, Woods argues the phone call was unlawfully intercepted because neither she nor Gilchrist consented to the recording, and there was not a valid court order allowing the interception under 18 U.S.C. § 2518.   Doc. 111 at 2.   She further argues the recording violated Florida law.   *Id.* Because the recording was discussed during testimony presented to the Grand Jury, she also seeks dismissal of the Superseding Indictment.

Doc. 112 at 2. The Amended Motion to Suppress makes the same arguments but adds additional argument about why Florida law should apply. *See generally* doc. 121; *see also id.* at 2-4.

The Government argues the recording is not a Title III wiretap and therefore prior court authorization was not required. Doc. 119 at 4. Instead, it argues, Agent Dye was a party to the conversation and was present with Gilchrist's consent, so his recording was proper. *Id.* at 5-7. It also contests Woods' assertion that Florida law governs the analysis. *Id.* at 7. Finally, it argues that, even if the recording were suppressed, the two federal agents who were physically present and heard the phone call can testify about the contents of the call. *Id.* at 8-9. Its response to the Amended Motion to Suppress argues that the amendment is out of time, and even if considered does not change the analysis. Doc. 112.

Although Woods urges the Court to look to Florida's two-party consent law, it appears clear that the legality of the challenged recording is governed by Title III. Even considering the substance of her late-filed Amended Motion to Suppress, it does not offer any binding authority even suggesting that Florida's two-party consent rules override the applicable

federal law.   *See generally* doc. 121.   Moreover, even looking to Florida law, its statute governing law enforcement recordings of electronic communications mirrors Title III and contains similar exemptions.   *See* Fla. Stat. Ann. § 934.03.

"Title III of the Omnibus Crime Control and Safe Streets Act of 1968 . . . prescribes the procedure for securing judicial authority to intercept wire communications in the investigation of specified serious offenses."   *United States v. Giordano*, 416 U.S. 505, 507 (1974). However, Title III expressly exempts from its purview the interception of wire, oral, or electronic communications by a party to the communication or with the consent of a party to the communication.   *See* 18 U.S.C. § 2511(2)(c).

The Government has the burden of proving the recording falls into the Title III exceptions and that Agent Dye had Gilchrist's consent to the recording.   *See United States v. Stagner*, 2018 WL 9708485, at *2 n.1 (S.D. Ala. June 25, 2018).   "Consent is a preliminary question of fact to be determined from the totality of the circumstances, and in most cases the requisite consent is deemed extant where the informant placed the

telephone call knowing that it would be recorded." *Id.* (citing *United States v. Gomez*, 947 F.2d 737, 738 (5th Cir. 1991)). "Whether a party's consent to the recording of a conversation is "voluntary" is a question of fact, which the court must determine from the totality of the circumstances. . . . The government need not present the testimony of the consenting party; rather, the government may establish that the party consented to the interception through other means." *United States v. Ligambi*, 891 F. Supp. 2d 709, 716-17 (E.D. Penn. 2012).

Agent Dye testified during the hearing and discussed his visit to Gilchrist's house during which he recorded the telephone call. Doc. 140 at 1. He explained that he carries a recording device in the front sleeve of his notebook. Before knocking on Gilchrist's door, he turned it on but kept it in the notebook and did not initially tell Gilchrist that he had a recording device. Dye and the other agent present eventually asked Gilchrist to call Woods. *See* doc. 140-2 at 42. Gilchrist appears to have done so almost immediately. *Id.* Dye testified that Gilchrist herself placed the phone on the table and placed the call on speaker. While the phone was dialing, Dye removed his recording device from his notebook

and moved it towards Gilchrist so that it could capture the call. Gilchrist continued with her call to Woods, in the presence of the two agents, and with the recording device visibly located in her presence. This testimony shows that Gilchrist placed the telephone call to Woods knowing it would be overheard by the two agents, and allowed the call to continue knowing it would be recorded. The Court should find, therefore, that the Government has met its burden, the call was recorded with a party's consent, and the recording was lawful.

Woods' Amended Motion to Suppress also includes argument sounding in Fourth Amendment principles and cites to authority discussing warrantless searches. See doc. 121 at 5 (citing *Katz v. United States*, 389 U.S. 347 (1967)). Considering Gilchrist's consent to the agents' presence in her home and her voluntary phone call to Woods, the recording was not made in violation of *Woods'* Fourth Amendment rights. "The admission into evidence of recorded conversations between a defendant and a consenting government informant does not violate the Fourth Amendment right of the accused." *United States v. Smith*, 918 F.2d 1551, 1558 (11th Cir. 1990). When an informant gives his consent

29

before the recording of a conversation, a warrant is not required.   *United States v. Byrom*, 910 F.2d 725, 734 n. 9 (11th Cir. 1990).

The Motion to Suppress, as amended, docs. 111 & 121, and the Motion to Dismiss, doc. 112, should be **DENIED**.

## VI.   MOTION TO DISMISS FOR FUNDAMENTAL AMBIGUITY

The two final motions requiring resolution are Woods' Motion to Dismiss for Fundamental Ambiguity, doc. 114, and her Amended Motion to Dismiss for Fundamental Ambiguity, doc. 133.[3]   The Government opposes dismissal.   Docs. 120 & 137.

"A criminal defendant who seeks to obtain dismissal of an indictment . . . bears a heavy burden in attempting to justify such relief." *United States v. Navarro-Ordas*, 770 F.2d 959, 968 (11th Cir. 1985) (quoting *In re Grand Jury Investigation*, 610 F.2d 202, 219 (5th Cir. 1980)).   Woods attempts to carry that burden by presenting an overview of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act,

---

[3] Woods' Amended Motion was filed after the deadline for filing pretrial motions. *Compare* doc. 133 (dated October 10, 2022) *with* doc. 95 (motions due by August 20, 2022).   It is, therefore, untimely.   The Government did not raise the timeliness argument in its response to the Amended Motion.   *See* doc. 137.   The Court, in its discretion, has considered the substance of the Amended Motion.

and arguing the SBA, tasked with assisting businesses in need through CARES Act loans, provided "confusing and ambiguous forms, inadequate process and procedures, and lack of access to adequate competent assistance to understand the various coronavirus aid applications, the continuously changing loan rules and process, the adequacy of required documents, along with a faulty antiquated loan processing portal that was unable to function within the range of capacity for the millions of applications that inundated the website and portal."   Doc. 114 at 3-4. Therefore, she argues, her "inaccurate" answers to the Government's "confusing and ambiguous form" cannot support the charged criminality. *Id.* at 4.

For a Court to dismiss an indictment based on fundamentally ambiguous Government forms, it must find that the form at issue was "ambiguous as a matter of law." *United States v. Manapet*, 928 F.2d 1097, 1102 (11th Cir. 1991).   "[A] question or phrase is ambiguous as a mater of law when it is not a phrase with a meaning about which men of ordinary intellect could agree . . . ."   *Id.* at 1100 (internal quotes and citation omitted).   "[W]hen a question is 'arguably ambiguous,' 'the

defendant's understanding of the question is a matter for the jury to decide.'" *Id.* at 1099 (quoting *United States v. Bell*, 623 F.2d 1132, 1136 (5th Cir. 1980)). Even where the form contains fundamentally ambiguous questions, it is the answers to those ambiguous questions that cannot form the basis of a prosecution. *Id.* at 1102.

Woods is charged with a conspiracy to commit wire fraud by, among other things, submitting applications to the SBA containing false information about when businesses were established and how much gross revenue those businesses earned. *See, e.g.*, doc. 87 at 6-9. She is alleged to have used fake tax documents to support those applications. *Id.* She is also charged with substantive counts of making false claims and submitting false documents resting on the same types of allegations. *See generally* doc. 87. Although she convincingly argues that the SBA's process for applying for EIDL and other CARES Act funds was perhaps hastily created and chaotically run, she does not point to any specific question on any particular form that even arguably could be considered so fundamentally ambiguous as to absolve her, as a matter of law, from

such allegations.[4]   At most, she has identified an arguably ambiguous process, and her understanding of that process "is a matter for the jury to decide.'"   *Manapet*, 928 F.2d at 1099.

The Motion to Dismiss for Fundamental Ambiguity, as amended, should be **DENIED**.   Docs. 114 & 133.

## VII.  CONCLUSION

Woods' Motion to Allow Participation in Voir Dire is **DENIED**. Doc. 19.   Her "Motion for Notice by the Government of the Intention to Use Evidence" is **DENIED**.   Doc. 20.   The Motion to Preserve Evidence and Motion for Disclosure of Electronic Surveillance are **GRANTED**, as unopposed.   Docs. 21 & 22.   Woods' Motion to Sever is **DENIED**.   Doc. 105.   Her motion *in limine* is **DENIED**.   Doc. 109.

---

[4] To support her argument, Woods proffered during the hearing: a copy of the CARES Act itself, doc. 140-3 at 20-25, a copy of regulations governing the SBA, id. at 26-50, copies of EIDL "Frequently Asked Questions," *id.* at 51-64; doc. 140-4 at 1-20, a copy of the EDIL Intake Application Summary for "EZ Legal Solutions, LLC," doc. 140-4 at 73-76, a copy of what Woods titles a "EIDL Loan Application," id. at 77-99, the Articles of Incorporation for "EZ LEGAL SOLUTIONS, LLC," doc. 140-5 at 1-3, various Inspector General Reports discussing the SBA's response to the coronavirus pandemic, id. at 4-128; doc. 140-5 at 1-38, Woods' credit report, doc. 140-6 at 39-45, a blank copy of Official Form 207, id. at 47-60, a copy of "§ 9009. Emergency EIDL grants," id. at 62-63, a copy of an email from Woods to someone at the SBA, id. at 64-68, a copy of the SBA's internal notes on EZ Legal Solutions, LLC's EIDL application, id. at 70-73, and a copy of the IRS's guidance on automatic extensions, id. at 75-77.

Defendant's Motion to Strike should be **DENIED**.   Doc. 110.   The Motion to Suppress, as amended, should be **DENIED**.   Docs. 111 & 121. The Motion to Dismiss should be **DENIED**.   Doc. 112.   The Motion to Dismiss for Fundamental Ambiguity, as amended, should be **DENIED**. Docs. 114 & 133.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal.   11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

      **SO ORDERED AND REPORTED AND RECOMMENDED** this 22nd day of November, 2022.

**CHRISTOPHER L. RAY**
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**